COOK, appellant, v. McCLURE.

*Boundary — margin of artificial pond — alluvium.*

Defendant's lands were bounded by the high-water line of an artificial pond. *Held*, that the soil formed by natural accretions, deposited along the shore by the water, belonged to him.

APPEAL from a judgment in favor of defendant, entered upon the verdict of a jury. The action was tried at the Erie circuit in October, 1869. It was brought to recover a small strip of land in the possession of the defendant, and upon which he had erected and maintained for some years a building used for a store-house. The claim of the plaintiff was that the strip of land was formerly covered with the water of a mill pond caused by the back flow of the water of Spring creek, by reason of the erection and maintenance of a mill dam across said creek, erected and maintained for many years for the supply of a mill owned and operated by the plaintiff and her grantors. The plaintiff and defendant claim under the same title and the same grantors; the boundary line between them being the high-water mark of the pond. The mill and dam were erected and the pond raised at an earlier date than 1822, and long before the defendant took title, and evidence was given tending to show that the place where the defendant's store stood was covered, at times before he took title, by the waters of said pond, and that the ground where said store was made in whole, or in part, by accretions of land and subsidence of the water of the pond, or the changes of the same. No exceptions were taken to the reception or rejection of evidence during the trial, and it does not appear what precise· questions of fact were submitted to the jury, the charge of the judge not being in the case. The jury found a verdict for the defendant, and the case came here upon appeal from the judgment rendered upon such verdict and exceptions.

*John C. Strong*, for appellant.

*Lewis & Gurney*, for respondent.

E. DARWIN SMITH, J. Two exceptions, taken by the plaintiff's counsel to the charge of the circuit judge, present the only points for review upon this appeal. The first exception was to the follow-

ing portion of such charge : "That where a man's boundary line is a stream of water, if natural causes added to the soil by accretions, the soil thus added belonged to the owner of the bank or shore." This proposition is unquestionably sound law. Angell on Water Courses, § 53, and note; 3 Kent Com. 428, n., 429 (9th ed.); *Halsey* v. *McCormick,* 18 N. Y. 149.

The next exception is to the following portion of the charge, " that if such natural accretions took place when the boundary line was a pond, such accretions belonged to the adjacent owner where the accretions were deposited." This, as a general abstract proposition, having reference to the same classs or kind of accretions referred to or described in the previous statement or portion of the charge excepted to, and must, also, I think, be equally sound.

The learned judge clearly had reference to that class of artificial ponds, which was the subject then under consideration, and had furnished the occasion for the pending controversy. Such ponds raised by dams erected across small fresh water streams, and fluctuating in their height with every rise and fall of the water in the stream, must be subject to the same law on the subject of alluvium which applies to the streams themselves.

Such rule doubtless applies to the small lakes and bays and natural ponds in the interior of the country, as well as to the great lakes, independent of the terms or provisions in particular grants or deeds.

The question upon which the judge was called to pass and did pass, in this part of his charge, was one relating to alluvium as between riparian or shore owners of an artificial pond of small extent — a mill-dam pond upon a fresh water stream.

The learned counsel for the plaintiff cites and relies upon the case of *Bradley* v. *Rice,* 13 Me. 200. This case presented the question what was the proper construction of a grant of land bounded by a pond called Flying pond, which was a natural pond or small lake in the interior of the State.

The pond had been raised by artifical means, and the court simply held that the deed took the grantee to the margin, in its natural state.

The learned judge in that case said : " Had the land been bounded upon a river or stream, or upon an artificial pond created by expanding a stream by means of a dam, the riparian owner would go to the thread of the stream.

Whether this be the rule or not in respect to artificial ponds, it

can hardly be doubted, I think, that when such a pond is made the boundary of a grant, that the grantee would go to low-water mark and be entitled to the alluvium made in the manner described in the charge of the judge at the circuit, on the margin of the pond.

Such a grant it would be presumed, I think, was intended to take the grantee to the water's edge at all times, having regard and reference to the beneficial use of the water, and would include necessarily the accretions made within such limits. While, with a pond long used and lawfully kept up, the owner would undoubtedly have the right to flow to the original high-water mark, and have an easement in the land to that extent. *Waterman* v. *Johnson,* 13 Pick. 265.

The portion of the charge excepted to, we think, was right, and the judgment should be affirmed.

*Judgment affirmed.*